FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

☆ JUN 24 2010 ☆

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

JONATHAN COHEN, individually
and on behalf of all others similarly situated, Index No.

Plaintiff,

-against-                                                      COMPLAINT    **GLEESON, J.**

T MOBILE USA, INC., MOBILE MESSENGER, INC., and
SHARECASH, LLC,                                                            **GOLD, M.J.**

Defendants.
-----------------------------------------------------------X

Plaintiff Jonathan Cohen, on behalf of himself and a Class of similarly situated

individuals, through his attorney, Richard A. Guttman, brings this class action against defendants

Sharecash, LLC, Mobile Messenger, Inc. and T Mobile USA, Inc.  Plaintiff alleges as follows

upon personal knowledge as to himself and his own acts and experiences, and, as to all other

matters, upon information and belief.

NATURE OF CASE

1.      This class action against the unauthorized third party internet biller, the billing

aggregator, and the wireless carrier involves the collection of charges as against numerous

subscribers for 'cramming.'

2.      Defendant T-Mobile USA, Inc. is wireless carrier that provides

telecommunications and messaging and data services. The corporate headquarters of T-Mobile

are located in Bellevue, Washington.

3.      47 C.F.R. PART 201 states that "§ 201.2  Definitions. The following definitions

apply herein:  (a) Communications common carrier, specialized carrier, or carrier means any

individual, partnership, association, joint stock company, trust, or corporation subject to Federal

or State regulation engaged in providing telecommunications facilities or services, for use by the public, for hire." T Mobile is regulated by Title II of the Federal Communications Act, 47 U.S.C. 201 *et seq.*

4.      47 USC Sec. 332 defines a commercial wireless carrier and the regulatory treatment of a wireless carrier and whether it should be treated as a common carrier under Title II of the Federal Communications Act. In accordance with 47 USC Sec. 332, T Mobile is a common carrier under Title II of the Federal Communications Act.

5.      Mobile Messenger is a billing aggregator. Mobile Messenger is headquartered in Los Angeles, California. Mobile Messenger provides services that facilitate the marketing, distribution and monetization of digital content to mobile devices. Mobile Messenger has experience as an aggregator, payment processing, mobile enabler and content messaging supplier. Products include: Proprietary Content Management System, Delivers ringtones, videos, images and text alerts, Gateway & Billing Aggregation, Secured MEP billing, Mobile Text Chat Application.

6.      Sharecash, LLC is a New York entity that operates a website and hosts a variety of files that may be uploaded by internet users to its file servers. Sharecash, LLC is also an unauthorized third party vendor of bogus SMS message services.

7.      There also exist small and hard-to-determine-the-corporate-existence-of entities that are entirely unknown as to their identity, but upon information and belief they are not independent entities but are directly associated with Sharecash, LLC, and/or are so wrapped up in the Sharecash, LLC business model and so dependent upon Sharecash, LLC to enable their cashflow through the unauthorized billing upon wireless carrier's customers that for all practical

purposes they are not independent entities. These entities are listed as "TYP3 Media" and "Mobile Data Gro" on the T Mobile billing notices.

8.      A great number of New York residents do not have a telephone landline, because utilities are excessively expensive in the New York greater metropolitan area, where most New Yorkers live. Instead, they rely entirely on a wireless carrier cellphone number and that is their sole phone number.

9.      As set forth below, Plaintiff and the Class bring claims against T Mobile for violation of the Telecommunications Act of 1934, 47 U.S.C. §§ 201, et seq., and violation of New York's General Business Law Sec. 349, as well as for common law unjust enrichment. Plaintiff and the Class bring claims against defendants Sharecash, LLC and Mobile Messenger for tortious interference with contract, and violation of New York's General Business Law Sec. 349, as well as for common law unjust enrichment.

JURISDICTION

10.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, 47 U.S.C. § 207, and 28 U.S.C. § 1332(d).

11.     This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

VENUE

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b) and (c).

DEFINITIONS

13.     "Cramming" is the practice of placing unauthorized, misleading, or deceptive charges on a telephone bill or wireless carrier bill.

14.     "Wireless Carriers' Customers" are those people who subscribe to wireless service through T Mobile. Although they frequently are satisfied with the breadth and depth of T

Mobile's wireless services, they are beset and victimized by little known and mysterious charges that are intentionally facilitated by T Mobile.

15.     An "Unauthorized third party vendor" is a vendor that, as part of their business model, connects unwitting wireless carriers' customers with a fake website that requests personal information, including their wireless telephone number. The website does not provide wireless carriers' customers with fair and adequate notice that they will be billed for receiving bogus SMS messages through their wireless service that are generally useless and have no intrinsic value, to any reasonable person. As a result of this scheme, unauthorized charges are placed on consumers' wireless bills.

16.     The "billing aggregator" as an entity that, on behalf of one or more unauthorized vendors, arranges to have charges for the unauthorized third party vendors' services placed on wireless carrier's bills sent to wireless subscribers, arranges for wireless carriers to collect those charges from cellular subscribers, and arranges for unauthorized third party vendors to receive payment for their services. Once an unauthorized third party vendor decides to place charges on a wireless customer's bill, a billing aggregator receives billing information from the unauthorized third party vendor, then arranges for the charges to be placed on the wireless carrier's billing to the wireless customer. When a wireless customer pays a bill from the wireless carrier, the wireless carrier takes a portion of the funds from the billing aggregator's charges, then transmits the remaining funds to the billing aggregator. The billing aggregator then takes another portion of the funds and transmits the remaining funds to the unauthorized third party vendor.

INVOLVEMENT OF T MOBILE IN UNAUTHORIZED BILLING PRACTICES

17.     This class action against T Mobile involves the charging of consumers for products and services they have not requested or authorized and the illegal billing and collection of such charges. T Mobile adopts practices billing and collecting on behalf of itself and myriad third-party companies for various third-party products and services.

18.     T Mobile knows that its third-party billing and collection system lacks sufficient safeguards to prevent unauthorized charges from being added to customers' telephone bills. However, it continues to bill and collect such third-party charges without taking sufficient steps to ensure that the charges are in fact authorized by the billing aggregators.

19.     T Mobile takes insufficient steps with regard to its third-party billings. It does not even take the steps to determine whether such billings are authorized in line with the steps that T Mobile requires for one of its own customers to change his account with T Mobile to make sure that any person purporting to deal with the billing on that account is in fact an authorized person. For instance, T Mobile will not allow a person to change or manage a customer account without providing a unique identifier or other password type validation associated with that customer's account. Yet, T Mobile does *not* require its billing aggregators to provide such confirmatory information, nor does it require its billing aggregators to make sure the third-party vendors obtain such identifying information from wireless customers, or whether they are actually authorizing charges from third-party vendors.

20.     T Mobile is by no means an innocent conduit in the matter of unauthorized third-party vendor billing and does not merely bill on behalf of third parties and passing the collected money on to the third parties. Instead, T Mobile is a full joint venturer with the unauthorized third-party vendors and the billing aggregators.

21.     T Mobile does not allow most third party service providers to place charges directly on their bills. Instead, T Mobile requires that the third party providers bill through so-called billing aggregators, of which there are only a few.  Mobile Messenger is a large billing aggregator and acts as an intermediary between the third-party vendor and the wireless carrier

22.     The largely unsupervised growth of the third-party billing industry has led both to the above-described structure and to a disastrous flaw within it. That flaw – understood, perpetuated, and encouraged by T Mobile, billing aggregators, and service providers – is an open secret within the industry, but little understood outside of it.

23.     Using a telephone number as the basis for billing of products and services is a virtual invitation to fraud and abuse because there is no reasonable basis for believing that the person providing a telephone number is in fact the actual wireless carrier customer, that is, the person legally empowered to authorize charges to that number.

24.     Indeed, *any person* capable of obtaining a wireless carrier consumer's telephone number can cause charges for a product or service to be included on that consumer's phone bill.

25.     There are hundreds of third-party service provider websites on the internet where anyone can initiate billing subscriptions by filling out and submitting electronic forms, using *anyone's* phone number. The lack of sufficient checks or safeguards within the T Mobile third-party billing and collection system to prevent unauthorized charges from being added to customers' wireless service bills has led to rampant abuse of T Mobile's customers.

26.     T Mobile knows, or is reckless in not knowing, that its third-party billing and collection system lacks sufficient checks or safeguards to prevent unauthorized charges from being added to customers' wireless service bills.

27.     T Mobile has a policy and practice of not obtaining valid authorizations directly from its wireless service customers, but rather purports to rely upon its billing aggregators to obtain such authorizations, even though it knows or is reckless in not knowing that the billing aggregators are not obtaining such authorizations. Instead, T Mobile uses a standardized contract with its billing aggregators that purports to shift the burden to the billing aggregators to only submit billing from third-party providers who represent that they will only submit billing based upon valid authorizations.

28.     T Mobile continues to improperly shift responsibility to third parties for obtaining authorization even though it knows or is reckless in not knowing that on a widespread and recurring basis, charges are in fact being sent from the third-party providers through the billing aggregators via T Mobile to T Mobile's customers that are not based on valid authorizations. T Mobile places this responsibility-shifting language into its contracts with the billing aggregators so as to seek to give it plausible deniability with respect to the unauthorized charges for which it bills its customers that it knows or is reckless in not knowing are not based on valid authorizations.

29.     T Mobile's conduct constitutes a deliberate and willful scheme to cheat large numbers of people out of small amounts of money.

30.     Because the amount of these charges is small on an individual basis – about ten dollars per month per customer with each example of an unauthorized third party vendor's billing – and because of T Mobile's vast resources and superior bargaining power, T Mobile employs this scheme with the expectation that its illegal conduct will, if detected, go unpunished.

31.     T Mobile knows, however, that many customers will not even notice the unauthorized charges, and that if they do, the amounts will be relatively small so that many of

them will not take the time to investigate and object and will ultimately grow frustrated in trying to rectify the situation and abandon such efforts.

32.     The only manner in which T Mobile's customers find out about unauthorized third party vendor charges is when T Mobile places such charges, through the billing aggregators, on customers' bills.

33.     T Mobile has a legal duty under federal law (e.g., 47 U.S.C. 201 *et seq*.) not to bill and collect for unauthorized charges.

34.     T Mobile has a legal duty under GBL Sec. 349 not to bill its customers with unauthorized third party vendor charges, whether or not from billing aggregators.

35.     At all times relevant hereto, there was also in existence 47 C.F.R. § 64.2401, entitled "Truth-in-Billing Requirements," which provided, in relevant part, as follows: "(b) Descriptions of billed charges. Charges contained on telephone bills must be accompanied by a brief, clear, non-misleading, plain language description of the service or services rendered. The description must be sufficiently clear in presentation and specific enough in content so that customers can accurately assess that the services for which they are billed correspond to those that they have requested and received, and that the costs assessed for those services conform to their understanding of the price charged.. . . (d) Clear and conspicuous disclosure of inquiry contacts. Telephone bills must contain clear and conspicuous disclosure of any information that the subscriber may need to make inquiries about, or contest, charges on the bill."

36.     T Mobile's billing and collection of unauthorized charges is further exacerbated by the misleading and deceptive nature of the wireless service bills it uniformly sends to customers. T Mobile's wireless service bills are misleading and deceptive in that customers are led to believe that the charges on the bill are legitimate by the very fact of their inclusion in the

amount indicated as owed to T Mobile on the bill. The placing of a charge for products or services on a telephone bill is a representation that the subscriber has in fact authorized any such charge included on the bill and actually owes that sum.

37.    Those charges that appear on customers' bills are not sufficiently identified or explained; thus, a reasonable customer cannot determine whether he or she actually requested and received the services for which the charge is made.

38.    T Mobile's wireless service bills also uniformly contain misleading and/or unclear descriptions of the manner in which disputes regarding the third-party charges could be addressed and lack sufficient information (such as the date the charges were authorized, the manner in which they were authorized, the name of the person who authorized the charges, etc.) such that reasonable customers could inquire about, or contest, charges on the bill.

39.    Defendants are liable to Plaintiffs and the Class for damages and attorneys' fees, pursuant to 47 U.S.C. § 206, which provides as follows: In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful . . . such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee . . . .

PLAINTIFF'S INVOLVEMENT

40.    At all relevant times, Plaintiff Cohen was a T Mobile wireless service customer. In or about March, 2010, Cohen went on an internet site and wanted a file to download. That site promised that Cohen could download such file through ShareCash.org. Cohen then clicked on ShareCash.org and the site explained that Sharecash.org has both a premium and a free downloading service. The premium service required that Cohen pay Sharecash.org money.

Cohen, not wanting to pay money to download the file, chose the free service. The Sharecash.org website then explained to Cohen that Cohen would have to fill out several surveys that were free in order to retrieve the file. Cohen then clicked to a free survey to find out whether Cohen was a 'fashion wiz.' The site then explained to Cohen that "sorry, we could not finish your survey, do you want to fill in the next survey?". Cohen could not adequately fill out the survey, which was by design, so Cohen went to the next survey to fill that out. That survey was for a site called "FUNMOBILE" and which requested Cohen's name and his cellphone number, which Cohen filled in. Cohen filled in his phone number as part of the ongoing survey process, in order to download the file in question for free. When Cohen filled in the cellphone number, he received an SMS message on his cellphone on April 22, 2010 at 10:25:48 AM: PIN:6320 mobilefunster.com Polytones Club@$9.99/mo with 15CR/mo Msg&data rates may aply. Reply HELP for help. Reply Yes!" and then received an SMS message on his cellphone on April 22, 2010 at 10:26:21 AM: UR subs to MobileFunster Polytones Club@$9.99/mo with 15CR/mo. Msg&data rates may aply.help:care@mobilefunster.com"

41.     Cohen was surprised that money was involved and believed that such an innocent use of the internet did not involve unauthorized charges. However, he was surprised at the bill he received from T Mobile which stated: 4/22/10 7:26 AM Funmobile 22643 Funmobile8776611136 9.99 and that this was a monthly continuing charge.

42.     Cohen had to call T Mobile customer service, which gave Cohen two options to end the subscription from Funmobile; to text five digits, or to telephone a toll free number to end the subscription. The five digit text did not go through, so Cohen had to call the toll free telephone number to get the subscription removed.

43.     Then Cohen was directed to a site called Aladdin Horoscopes, which requested Cohen's name and his cellphone number, which Cohen filled in.  Cohen filled in his phone number as part of the ongoing survey process, in order to download the file in question for free.  When Cohen filled in the cellphone number, he received an SMS message on his cellphone on April 22, 2010 at 10:27:05 AM:  Your pin is 6125 Enter this on the Aladdin page to have your wish granted! Txt help 4help. 1800 235 7105 9.99pm.  Cohen then received another SMS message at 10:27:22 AM: "Your Wish Has Been Granted! A deeper love will find you soon.  Appreciate the ones closest to you and you will find what you are seeking."  Cohen then received another SMS message at 10:27:27 AM: "Welcome 2 Aladdin horoscopes subscription 3x/wk allwishesgranted.com Txt HELP 4help or 8004166129 $9.99/mth Msg&Data Rates May Aply STOP 2end".

44.     Cohen was surprised that money was involved and believed that such an innocent use of the internet did not involve unauthorized charges.  However, he was surprised at the bill he received from T Mobile which stated: 4/22/10 7:27 AM  TYP3 Media  62131 MMText(800)416-6129  9.99  and that this was a monthly continuing charge.

45.     Cohen had to call T Mobile customer service, which gave Cohen two options to end the subscription from TYP3 Media; to text five digits, or to telephone a toll free number to end the subscription.  The five digit text did not go through, so Cohen had to call the toll free telephone number to get the subscription removed.

46.     Then Cohen was directed to a site called 2 minute IQ test, which requested Cohen's name and his cellphone number, which Cohen filled in.  Cohen filled in his phone number as part of the ongoing survey process, in order to download the file in question for free.  When Cohen filled in the cellphone number, he received an SMS message on his cellphone on

April 22, 2010 at 10:28:42 AM: "Enter PIN 1064 on quizz.info/cusiq Mobile Quiz Club 2 ur cell Txt HELP 4help 8004166129$9.99/mth 3x/wk Msg&Data Rates May Aply". Cohen then received another SMS message at 10:28:10 AM: "Well done, ur IQ is 126. You are a Genius!! Did you know that 4 every person on earth, there are an estimated 200 million insects?" Cohen then received another SMS message at 10:28:15 AM: "2MinuteIQTest Mobile Quiz Club 2 ur cell quiz.info/cusiq Msg&Data Rates May Aply 3x/wk Txt STOP 2end Txt HELP 4help 8004166129$9.99/mth".

47.     Cohen was surprised that money was involved and believed that such an innocent use of the internet did not involve unauthorized charges. However, he was surprised at the bill he received from T Mobile which stated: 4/22/10     7:28 AM        Mobile Data Gro        87572 MMText(800)416-6129  9.99  and that this was a monthly continuing charge.

48.     Cohen had to call T Mobile customer service, which gave Cohen two options to end the subscription from Mobile Data Gro; to text five digits, or to telephone a toll free number to end the subscription. The five digit text did not go through, so Cohen had to call the toll free telephone number to get the subscription removed.

DEFENDANTS' VIOLATION OF NEW YORK'S GENERAL BUSINESS SEC. 349

49.     Sharecash LLC uses deception in order to gain a profit from consumers who utilize the internet.

50.     Such deceptive practices are directed at those consumers who want to download a file, then are asked to download the file from Sharecash, then if they do not want to purchase a Sharecash Premium Service paying through their PayPal account or from their debit card or their credit card, they are directed to fill out surveys (the "Sharecash Surveys"). Those surveys then are directed to websites that request the internet user consumer's name and his or her wireless

carrier telephone number, then the wireless carrier customer is charged a monthly fee, without authorizing such payment and hiding the fact that the customer will be billed on a monthly basis.

51.     Sharecash contracts with TYP3 Media and Mobile Data Gro and/or shares an arrangement whereby internet users who fill out the Sharecash Surveys are directed to websites either ostensibly owned and operated by TYP3 Media and Mobile Data Gro or are actually owned and operated by Sharecash. Those websites ostensibly owned and operated by TYP3 Media and Mobile Data Gro then request the internet user's wireless carrier cellphone number.

52.     Mobile Messenger, the billing aggregator, contracts with Sharecash, TYP3 Media and Mobile Data Gro so that when those websites ostensibly owned and operated by TYP3 Media and Mobile Data Gro request the internet user's wireless carrier cellphone number, Mobile Messenger immediately jumps upon that personal information and immediately sends the bill to the user's wireless carrier.

53.     T Mobile, the wireless carrier, contracts with the billing aggregator, Mobile Messenger, so that T Mobile will rely upon Mobile Messenger's "OK" that such bill is authorized by the wireless carrier's customer. T Mobile knows that such authorizations are false because they have received numerous customer complaints concerning the unauthorized third party vendors that emanate from the Sharecash- TYP3 Media and Mobile Data Gro – Mobile Messenger scam.

54.     Sharecash, by directing the internet user to fill out a survey, misleads the internet user into providing personal information consisting of that user's name and his or her wireless carrier telephone number.

55.     Mobile Messenger, by receiving the user's name and his or her wireless carrier telephone number from Sharecash and TYP3 Media and Mobile Data Gro, is engaged in a scam

whereby the internet user is mislead into providing her or her name and wireless carrier telephone number.

56. T Mobile, by billing its wireless carrier customer through Mobile Messenger, is engaged in a scam whereby the internet user is mislead into providing her or her name and wireless carrier telephone number.

57. Sharecash, upon information and belief, profits from these arrangements.

58. Mobile Messenger, upon information and belief, profits from these arrangements.

59. T Mobile, upon information and belief, profits from these arrangements.

60. The internet user who is a customer of the wireless carrier, when he is billed on a monthly basis through the billing aggregator to the wireless carrier, T Mobile, is injured as a result.

THE CLASS

61. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b) on behalf of himself and the following class: All current and former T Mobile wireless carrier customers in the United States that have been billed charges related to SMS messages on the cellphone from third party vendors because they have filled out surveys through the Sharecash website.

62. The Class consists of many individuals and other entities, making joinder impractical, in satisfaction of FRCP 23(a). The exact size of the class is ascertainable through Defendants' records, including but not limited to their billing and collection records.

63. The claims of Plaintiff is typical of the claims of the class. The claims of the Plaintiff and the Class are based on the same legal theories and arise from the same unlawful and willful conduct, resulting in the same injury to the Plaintiffs and Class.

64. The Class has a well-defined community of interest. The Defendants have acted and failed to act on grounds generally applicable to the Plaintiff and the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class.

65. There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect only individual class members within the meaning of FRCP 23(a).

66. Common questions of fact and law affecting members of the Class include, but are not limited to, the following:

a. Whether Defendants' conduct described herein is in violation of 47 U.S.C. §§ 201 *et seq.* and 47 C.F.R. § 64.2401.

b. Whether an enterprise has existed that affects interstate or foreign commerce.

c. Whether Defendants' conduct is in violation of New York's General Business Law Sec. 349

d. Whether Defendants Sharecash LLC or Mobile Messenger tortiously interfered with the contracts between T Mobile's customers and T Mobile.

Absent a class action, the respective class members would find the cost of litigating their claims to be prohibitive, and will have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

67. Plaintiff will fairly and adequately represent and protect the interests of the members of the respective classes. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and his counsel are committed to

vigorously prosecuting this action on behalf of the other respective class members, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other respective class members.

TORTIOUS INTERFERENCE

68.     T Mobile and Plaintiff and the Class had contractual relationship whereby the T Mobile customers agreed to pay a certain sum of money in exchange for activation of their wireless carrier accounts and their carriers' promise to provide various communication and related services to Plaintiff and the Class and to bill them only for products or services the purchase of which the T Mobile customers had authorized.

69.     Defendants Sharecash LLC and Mobile Messenger knew of said contractual relationships and intended to and did induce a breach or disruption of the contractual relationships.

70.     Defendants Sharecash LLC and Mobile Messenger intentionally interfered with said contractual relationship through improper motives and/or means by knowingly and/or recklessly continually causing unauthorized charges to be placed on the class members' bills.

71.     Plaintiff and the Class suffered loss as a direct result of the conduct of Defendants Sharecash LLC and Mobile Messenger.

COMMON LAW UNJUST ENRICHMENT

72.     Defendants have been enriched, unjustly, at the expense of plaintiff and the Class, due to unauthorized charges upon customer's wireless carrier bills.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class request the following relief:

a. That the Court enter an order certifying the Class and appointing Plaintiff as the representative of the Class, and appointing counsel for Plaintiff as lead counsel for the Class;

b. That the Court enter an order declaring that the actions of Defendants, as set out above, as well as in other respects, violate the law in the respects alleged;

c. That the Court enter judgment against Defendants for all economic, monetary, actual, consequential, and compensatory damages caused by its conduct, and if its conduct is proved willful, award Plaintiffs and the respective classes treble and exemplary damages;

d. That the Court award Plaintiff and the Class their costs and expenses, as well as reasonable attorneys' fees, in prosecuting this action;

e. That the Court issue an injunction prohibiting Defendants from continuing their conduct complained of herein; and

f. That the Court award such other and further relief as may be necessary or appropriate.

Dated:  June 17, 2010
        Brooklyn, New York

Richard A. Guttman, Esq. (RG 1183)
Law Office of Richard A. Guttman
Attorney for Plaintiff
84 Lakebridge Drive South
Kings Park , NY  11754
(516) 376-3250
email: raguttman@bigcitylaw.com